Mr. Justice Hagner
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner •of Patents refusing a patent to Camille A. Faure on February 21, 1890. His application was filed May 25, 1887 for “an improvement in the application of electricity as a motive power for driving or propelling vehicles.”
In his description of the invention he says:
*260 “ It consists in the application of secondary batteries or accumulators, preferably carried by a vehicle or upon one of a train of vehicles, to supply electrical energy to one or more electro-magnetic motors also carried by or upon the said vehicle, by one or more of a train of vehicles combined with means for varying the amount of energy supplied by the battery.”
Plainly stated, he claims to have invented an improvement upon all previous devices for propelling vehicles by electrical energy through storage-batteries carried by the vehicles moved, and not connected with any arrangement of wires outside of the carriage.
In January, 1882, Faure had obtained a patent “ for polarization, or secondary electric battery, claimed to be an improvement in secondary batteries,” 21 O. G., 67, which he had previously patented in France in 1881. This-patent is a constituent of the new invention for which he now claims a patent.
The specifications attached to the present application contain twenty-three claims for different combinations of the patent of 1882, applied through certain mechanical contrivances to the propulsion of vehicles. In August, 1888, the application was rejected by the examiner in charge. Thereupon, more than one-half of the claims were .erased and the others amended. The application in this form was rejected by the examiner in October, and.it was again amended in November, 1887, by erasing all the remaining claims and inserting four others. These were again reduced, on further objection by the office, to two, which were also rejected in February, 1888. On appeal to the Board oBExaminers-in-Chief this decision was affirmed in August, 1889. An appeal was then taken to the Commissioner of Patents, and affidavits of experts were allowed to be filed in behalf of the applicant. In February, 1890, the Commissioner affirmed the decision of the Board of Examiners, and from this decision the present appeal is taken. *261 Each step in the case was taken after argument. These facts in the history of the case are stated to show that the •application has received apparently the most careful examination in the office. The rejection of the claims by these ¡successive officers was placed substantially upon the ground that there was no patentable novelty in the elements of the •combination described in the application, and that the new result claimed was not a new product of the combination, but a mere aggregate of several results, each the complete product of one of the combined elements. • This familiar lest of patentability is thus stated in Hailes vs. Van Wormer, 20 Wall., 353, by Justice Strong:
“Merely bringing old devices into juxtaposition and there allowing each to work out its own effect without the production of something novel is not invention. No one by bringing together several old devices without producing a new and useful result, the joint product of the elements •of the combination and something more than an aggregate •of old results, can acquire a right to prevent others from •using the same device,” etc.
This principle was applied in 1 Mackey, 212, Fisher vs. ’The Commissioner of Patents.
It was conceded by the applicant that vehicles had previously been propelled on land by batteries carried on the vehicle. But it was contended that this was done in an unsatisfactory manner, bj^ reason of the imperfect character of the batteries employed; and also, that the batteries so used wrnre of the description known as primary batteries, in which the capability of furnishing electrical energy is not •due to the previous action of an electrical current derived from some other source of electrical energy, but is created •during the use of the machine itself while upon the vehicle •to be propelled. This force was necessarily feeble and insufficient for practical success in such locomotion. Faure ¡suggested in his present application the use of his own patented secondary battery, claimed to be made of lighter *262 material,.and superior to all others of its kind, which when placed upon the vehicles was already Charged with previously accumulated energy, and when exhausted was capable-of being “recuperated,” or “ regenerated,” as the phrase, is-differently used, by an electric current supplied from another source. This re-enforcement, according to his claim,, could be introduced while the battery remained upon the vehicle; or the exhausted battery could be removed and its-place supplied by one already charged and in full vigor.. And it was also insisted that no vehicle had ever been propelled on land by means of a secondary battery; thatReynier’s battery, referred to by the examiner, was not properly- a secondary battery, and that all secondary batteries previous to Faure’s were inferior to his and practically ■useless.
The charge of want of novelty is thus stated by the examiner in charge in the first rejection of the application:
“ It is held that the application of secondary batteries as-a motive power to locomotion is not patentable in view of the fact that primary batteries have been used in the same-way for the same purpose. See, for example, as one of the-earliest instances, Practical Mechanic and Eigineer’s Magazine, Glasgow, November, 1842, Yol. XI, pages 48 to 52, in which a detailed description is given of an electro-magnetic locomotive of one Davidson, which was propelled by an. electric motor furnished with energy by a primary battery on the Edinburgh and Glasgow Railroad. In the second place, even the application of secondary batteries to this-purpose is not new. See L’Electricite for August 5,1880, VoL, III, pages 253, 254, in which is given a description of a. 'boat propelled by one of M. Trouve’s motors, the electric-current being furnished by a Reynier battery, which is-described in same volume of same review, page 214, as a battery whose elements after use are regenerated by the-electric current. This is a very essential principle of a. secondary battery. In the arrangement of Trouve (and. *263 several others) are shown the gearing and its plain and well-known equivalent, which is shown in this application and covered in some of these claims. Moreover, similar gearing has been shown in traction engines. * * * Claims 10 to 20 are similar to the preceding claims, except that Faure’s particular secondary battery is used, which does not seem to give the claims a patentable novelty in.view of the fact that another species of secondary batteries has been used the same way on an ele'ctrically propelled vehicle.”
In the next decision rejecting the amended application the examiner uses this language:
“Trouve’s boat had a Reynier battery which supplied the electric energy to run the.motor. The Reynier battery, as before cited, is regenerated or charged by the electric current after use, this fact clearly showing it to be properly classed as a secondary or storage battery.”
In the decision made after the last amendment, which substituted two differently expressed claims for all previously presented, the examiner uses this language:
“This case was finally rejected on the reference cited— viz., Trouve’s boat propelled by a Reynier battery, which was held to be a complete anticipation of this invention. The claims introduced by last amendment are substantially the same as some of those rejected on above references. As far as the invention relates to the propulsion of vehicles by means of secondary batteries, it is held to be completely met by above references. As it is old to propel vehicles by secondary batteries, the idea covering broadly the propulsion of vehicles by a particular kind of secondary battery is not patentable, however it may be verbally presented.
The examiner, from whose decision the appeal was taken to the Board of Examiners, further said, in reply to the contention that Reynier’s was not a secondary battery :
“The reference given was L’Mectricite, Vol. 3. On page 214 Reynier’s battery is described as a battery whose elements, after use, are regenerated by the electric current. *264 On page 258 is a description of a boat propelled by one of M. Trouve’s motors, the electric current being furnished to the motor by a Reynier battery. The name “secondary” also seems to have exaggerated in popular apprehension the difference between these and other voltaic arrangements. They are secondary so far as they are made by means of another voltaic arrangement, or electric current, but when they are “formed” or “charged” they act in precisely the same manner as any other voltaic battery. * * * The distinguishing feature of secondary batteries — i. e., regeneration- — -was well known both in principal and practice prior to 1880. * * * A secondary battery acts, while supplying a current, exactly like any primary battery. It only differs from a primary battery in being capabie of having its elements (which while supplying a current are decomposed and recombined) restored to their original chemical condition, before use by action of an electric current. The description clearly shows that the Reynier battery is capable of having its elements so restored to their original condition, and that Reynier recognized this fact.”
The decision of the Board of Examiners affirms the decision of the examiner in charge. In the course of their able opinion they say :
“The combination of a vehicle propelled by a rotary motion imparted to a shaft, a primary battery, or a Reynier battery, an electric motor electrically connected to said battery, and a mechanical connection between the shaft of the-vehicle and the moving part of the motor.
“ This combination lias been held to be a bar to the allowance of the appealed claims, for the reason that one battery of any known kind having been used in that combination for the purpose of the combination, to there use another kind of battery in the place of the one already there used (for example, a secondary in place of a primary battery, or one type of secondary battery in place of another *265 "type of secondary battery) effects no invention, but merely a double use of that substituted battery.
“ The examiner decides that Reynier’s battery is a secondary battery, and that by" substituting his secondary battery for it in the old combination this applicant has made no invention, but has effected merely a double use of his secondary battery.
“The undisputed assertion of the applicant is, in effect, that the action of the motor under the energy discharged by a Faure battery, compared with its action with other batteries of the same weight, is more vigorous and more promptly responsive in changes of motion. If this improved action of a motor w'hen impelled by a- Faure battery could not have been inferred from the use of a Faure battery in other relations, it, when once conceived and achieved, would indicate the exercise of invention and effectuation of something more than a mere use of a Faure battery to get its ¡known utilities in other relations. It would indicate new ■capacities in the Faure battery for effecting the actuation of motors and an increased vigor and mobility in motors actuated by it, and would result in a new combination of a specific battery and a motor producing an improved electrical and mechanical action and a better result. But it does not appear that the Faure battery, when it operates a motor, acts in any manner or with any degree of vigor, quickness or mobility, other than that which it is known to have when used in any other relations for any other useful purpose. This being so, the improved result of the claimed combinations over the old combinations of the references is due solely to the known difference in the efficiency of the motor, and not to any action either of the specific battery ■or of the motor, when used together, which differs from the action of either when used with the other element of a different type. ■ It follows that in these combinations the application has nothing more than the use, in the old combinations, of a Faure battery where it effects its known *266 functions and results. This use does not require or indicate invention.”
The Board says further, when they were certifying the case on appeal to the Commissioner:
“ Reynier’s battery is such a battery that when it has become exhausted it may be recuperated by the passage there-through of an electric current, and it will then give back a current of electricity approximately the equivalent of the-charging current. Faure’s battery is a better one in this respect than Reynier’s. It will do more work for a given bulk, it will last longer, and may have many advantages, which are set forth in the brief in support of this appeal as-the sole reason why the claim should be allowed; but, after all, when used for locomotion it is only the substitution for an old and imperfect battery of a new and better one. In combination with an electric motor it does the same work in the same way. It is better in the combination only because the battery is better. There is no functional difference except in degree.
“For those structural features which make Faure’s battery so much the better than prior forms he already has a patent. He is secured in the • use of his improvement for all purposes to which it may be applied, locomotion included,, and this patent would, if granted, be to all' intents and purposes a second patent for matter already secured to him. If any person should purchase a battery for ringing a bell in his house, he could not use it with safety until after a careful search he had learned whether that particular battery had been patented in combination with the bell. Such a system, instead of being a benefit, would be an intolerable nuisance.”
The extract from UMectricite, as translated by the office,, seems to support fully the contention that Reynier’s battery was intended for use as a secondary battery. It’ is as follows :
“The new battery, as I have said, emits no volatile *267 products. In consequence it contains, after operating, all the substances employed, otherwise combined, but without loss. It is therefore possible to regenerate these products— that is, to bring them back to almost a new state. For that, it is necessary to pass through the exhausted liquids a quantity of electricity a little greater than that disengaged by the battery while dissolving the deposited'copper and depositing the dissolved zinc. By requiring of magneto-electric machines the electricity necessary for the-revivification the renewal of the liquids and metals of the-batteries is brought about at an expense of motive force.. Being cheaply produced in the regenerating shop by the help of powerful machines, the electricity will be stored in the regenerated liquids in a state of energy suitable for disposal and transportation. This indirect transportation-of the electricity generated by the machines will be in most cases more practicable and advantageous than the direct-transmission by cables.”
This brings the Reynier battery within the definition of a secondary battery as given in an approved work, Houston’s Electrical Dictionary, page 542.
“A secondary battery is an arrangement of voltaic cells-, deriving their differences of electric potential from the-action of an electric current sent through them from a. separate source.”
This opinion of the Commissioner of Patents is very careful and learned. After reviewing every point in the case, he affirms the decision of the Board of Examiners. But for the length to which this opinion has extended, we should make many citations from his interesting decision. We think his reasoning is conclusive, and its force is not weakened by the able argument made before us by the distinguished counsel who appeared for the applicant. We-have thought it but just to reproduce the foregoing extracts-from the opinions of the Patent Office officials, that due-credit may be given to them, rather than to adopt their- *268 •conclusions in our own language, as if they were the result •of our unassisted researches. It is due to this court, however, to add, that we have verified their correctness by •careful independent examination of all attainable authorities.
It is made evident in the case that the mechanical arrangements for applying the power are not new, but are such as are familiar to all experts. It is equally clear that .the result is not new — viz., the movement of vehicles by •electrical storage-batteries, for it is admitted that Trouve had propelled boats in this way.
The contention that such a use did not anticipate this •application because that experiment was on water, while this invention is designed for use on land, is untenable. 'The propulsion of vessels through water by such batteries is within the same principle as locomotion on land.
It has been decided that the application to a paddle-wheel vessel of a device borrowed from a land vehicle, or from a wind-mill, is not patentable. The Supreme Court in Blake vs. San Francisco, 113 U. S., 83, held that the adaptation to a portable steam fire engine, to be used on shore, of a valve that had been in use in stationary fire-engines on board ships, did not require any exercise of ingenuity or involve invention, and was therefore not patentable. So the application to the preservation of fruits or •of an invention for preserving eggs; the preservation of meats by a freezing mixture, already applied to ice-cream freezers; and the application of the sand-blast to clean iron, have each been held to be only instances of “ double use,” •and not patentable.
We think we would be doing a wrong to previous patentees and to the public generally if we should hamper the success of the very important problem of electric locomotion now attracting public attention everywhere, by assisting in the grant of the patent now applied for.
The subjéct of a patent, in the absence of a specific grant *269 from the Government, belongs to the public as common property. In proper cases a monopoly is granted' to the inventor and during its continuance it will be protected. Faure has already obtained a prolonged monopoly for his valuable improvement in secondary batteries. If they are the best obtainable, the public will be forced to use them, and their use will remunerate him for his labor. But this furnishes no reason why seventeen years in addition should practically be given to his patent by the grant of the very-broad claim to use this device.

The decision of the Commissioner is affirmed.